[Cite as *Romeo v. Romeo*, 2024-Ohio-5516.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

JULIE ROMEO NKA LENGYEL,

Plaintiff-Appellee,

v.

JAMES ROMEO,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MA 0048**

---

Civil Appeal from the
Court of Common Pleas, Domestic Relations Division, of Mahoning County, Ohio
Case No. 2013 DR 00605

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Shelli Ellen Freeze,* for Plaintiff-Appellee and

*Atty. Mark J. Lavelle*, for Defendant-Appellant.

Dated: November 21, 2024

**DICKEY, J.**

{¶1}    Appellant, James Romeo, appeals from the April 23, 2024 judgment of the Mahoning County Court of Common Pleas, Domestic Relations Division, overruling his objections and adopting a magistrate's decision.  The trial court ordered Appellant to reimburse his ex-wife, Appellee, Julie Romeo nka Lengyel, the sum of $1,543.57 for his one-half share of extracurricular expenses for their minor child.  On appeal, Appellant asserts the court erred by incorrectly applying the term "extracurricular" and incorrectly expanding the term's meaning to include travel softball and recreational softball.  Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶2}    Appellant and Appellee were married on September 3, 2011.  One minor child was born as issue of the marriage, M.R. (d.o.b. 2/29/2012).  The parties divorced on October 22, 2014.  They filed post-divorce motions regarding custody, child support, and the payment of extracurricular expenses which were resolved pursuant to an agreed judgment entry filed on October 27, 2020, stating in part:

> The parties acknowledge that the child is engaged in extracurricular activities and wish for her to continue same. Defendant agrees to pay Plaintiff, as and for his share of the minor child's extracurricular fees, up to Eight Hundred Dollars ($800.00) per calendar year, commencing 2021. For the remainder of calendar year 2020 Defendant's shares of the minor child's extracurricular fees shall not exceed Two Hundred Dollars and No Cents ($200.00). Reimbursement shall be made to Plaintiff within fourteen (14) days of the request.

(10/27/2020 Agreed Judgment Entry, paragraph 6).

{¶3}    Thereafter, various motions were again filed regarding custody, child support, and allegations that Appellant failed to pay his agreed upon share of the minor child's extracurricular expenses.  The motions were resolved pursuant to a subsequent

Case No. 24 MA 0048

agreed judgment entry filed on October 21, 2022, which does not include a monetary cap, stating in part:

> Plaintiff and Defendant shall equally share in paying for the minor child's extracurricular expenses including but not limited to uniforms, lessons, fees, equipment, travel expenses and the like. Plaintiff shall share all paid expenses with Defendant via electronic communication and Defendant shall reimburse Plaintiff within thirty (30) days of notification or vice versa. Defendant currently owes Plaintiff $375.46 in outstanding expenses and shall pay same directly to Plaintiff within sixty (60) days of the Agreed Judgment Entry.

(10/21/2022 Agreed Judgment Entry, paragraph 4).

**{¶4}** On December 19, 2023, Appellee filed a motion to show cause based on Appellant's failure to pay $1,543.57 as reimbursement for his one-half share of the minor child's extracurricular expenses. This amount represents fees for lessons, equipment, uniforms, and registration fees. All fees are solely related to the minor child's travel softball and recreational softball participation which are not connected or associated with the child's school.

**{¶5}** A hearing was held before a magistrate on January 18, 2024.

**{¶6}** Appellee testified that at the time of the parties' October 21, 2022 agreed judgment entry, their daughter was nine years old. The only activity the minor child was involved in was travel softball and recreational softball, i.e., community youth leagues not associated with school. Appellee said when she and Appellant entered into the October 21, 2022 agreed judgment entry, they "agreed on sharing [the minor child's] expenses for, I mean, everything that she did, whether it was extracurricular, travel softball, uniforms, lessons, fees, equipment, and anything of that sort for her." (1/18/2024 Hearing Tr., p. 8). Appellee testified that on September 20, 2023, she sent a text message to Appellant asking that he pay his outstanding one-half of their daughter's extracurricular expenses. Appellee said Appellant replied, "I have no intentions to give you anything more towards the thousand dollars that I've already given you this year." (*Id.* at p. 33).

Case No. 24 MA 0048

{¶7}    Appellant testified that when he and Appellee entered into the October 21, 2022 agreed judgment entry, the minor child was playing travel softball and was taking hitting and pitching lessons.  Appellant said that as of October 21, 2022, their daughter had only played softball for recreational leagues and travel teams.  Appellant was asked, "Did [your daughter] play … any school sports when you entered into this agreement with your ex-wife on October 21, 2022?"  (*Id.* at p. 56).  Appellant replied, "Not at that moment, no."  (*Id.*)  Appellant indicated that after the October 21, 2022 agreed judgment entry was entered into, he did in fact reimburse Appellee for half of the minor child's registration fee for her travel softball club and paid towards her pitching and hitting lessons.  When asked whether he just decided to stop paying the fees, Appellant stated, "I could not keep up with the spending."  (*Id.* at p. 59).

{¶8}    Following the hearing, on January 24, 2024, the magistrate filed a decision recommending to deny Appellee's motion to show cause for contempt but ordering Appellant to reimburse Appellee $1,543.57 for his one-half share of extracurricular expenses for the minor child.  Appellant filed objections six days later.  The trial court ordered the parties into mediation which was unsuccessful.

{¶9}    On April 23, 2024, the court overruled Appellant's objections and adopted the magistrate's decision.  Specifically, the court found the parties' October 21, 2022 agreement as to the definition of extracurricular expenses ambiguous and, therefore, declined to hold Appellant in contempt.  However, the court ruled that based on extrinsic evidence, the extracurricular expenses that the parties agreed to pay include the minor child's travel softball and recreational softball and is not limited to school related or school sponsored sports.  As a result, the court ordered Appellant to reimburse Appellee $1,543.57 for his one-half share of extracurricular expenses for the minor child.

{¶10}  Appellant filed a timely appeal and raises one assignment of error.

**ASSIGNMENT OF ERROR**

**THE TRIAL COURT ERRED BY INCORRECTLY APPLYING THE TERM "EXTRACURRICULAR" AND INCORRECTLY EXPANDING THE TERM'S MEANING IN THE CASE AT BAR.**

{¶11} In his sole assignment of error, Appellant argues the trial court erred in overruling his objections and adopting the magistrate's decision. Appellant asserts the court incorrectly applied the term "extracurricular" and incorrectly expanded the term's meaning to cover the expenses of non-school related activities engaged in by the parties' daughter. Appellant believes the definition of the term "extracurricular" is clear and therefore, related expenses should be limited to those activities directly connected to school curriculum.

{¶12} "An appellate court reviews the trial court's adoption of a magistrate's decision under an abuse of discretion standard." *Kurilla v. Basista Holdings, LLC*, 2017-Ohio-9370, ¶ 17 (7th Dist.), quoting *Proctor v. Proctor*, 48 Ohio App.3d 55 (3d Dist.1988). An abuse of discretion occurs when a court exercises its judgment "in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶13} "An agreed judgment entry is a contract that is reduced to judgment by a court." *Sovak v. Spivey*, 2003-Ohio-6717, ¶ 25 (7th Dist.), citing *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 39 (1972). "When reviewing a contract, the court's primary role is to ascertain and give effect to the intent of the parties." *Fiscus v. Nordquist*, 2020-Ohio-4730, ¶ 41 (7th Dist.), citing *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999). "A contract that is, by its terms, clear and unambiguous requires no interpretation or construction and will be given the effect called for by the plain language of the contract." *Fiscus* at ¶ 41, citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53 (1989). "If the language of the contract is ambiguous, the intent of the parties becomes a question of fact." *KSMAC Holdings, Ltd. v. Ice Zone Realty, Ltd.*, 2022-Ohio-1456, ¶ 20 (7th Dist.), citing *Savoy Hosp., L.L.C. v. 5839 Monroe St. Assocs., L.L.C.,* 2015-Ohio-4879, ¶ 31 (6th Dist.), citing *Beverly v. Parilla,* 2006-Ohio-1286, ¶ 26 (7th Dist.).

{¶14} A contract is considered ambiguous if the language is "unclear, indefinite, and reasonably subject to dual interpretations or is of such doubtful meaning that reasonable minds could disagree as to its meaning." *Beverly* at ¶ 24. If an ambiguity exists, courts are permitted to consider extrinsic evidence to determine the parties' intent. *Id.* at ¶ 26. "Extrinsic evidence includes the circumstances surrounding the parties at the

time the contract was made and the objectives they intended to accomplish by entering the contract." *Cadle v. D'Amico*, 2016-Ohio-4747, ¶ 24 (7th Dist.), citing *Oryann, Ltd. v. SL & MB, L.L.C.,* 2015-Ohio-5461, ¶ 26 (11th Dist.). A trial court has broad discretion in clarifying ambiguous language. *Rohr v. Williams*, 2007-Ohio-7207, ¶ 22 (7th Dist.).

**{¶15}** In this case, Appellant and Appellee hold different interpretations to the meaning of the word "extracurricular" as it pertains to the language contained within their October 21, 2022 agreed judgment entry. Appellant believes the term "extracurricular" only relates to school activities. Appellee, on the other hand, believes "extracurricular" also relates to non-school activities, including the minor child's travel softball and recreational softball.

**{¶16}** The trial court found that the term "extracurricular" is not legally defined statutorily or by Ohio domestic relations case law. The court stated:

> Dictionary.com defines the term "extracurricular" to mean "outside the regular curriculum or program or courses" or "outside one's regular work, responsibility, or routine." See Dictionary.com, 2024. http://www.dictionary.com (19 January 2024). Other dictionaries define the term more narrowly. For example, The Merriam Webster Online Dictionary defines "extracurricular" as "not falling within the scope of a regular curriculum" or "of or relating to officially or semiofficially approved and usually organized student activities (such as athletics) connected with school." See *Merriam-Webster.com.* 2004. https://www.merriam-webster.com (19 January 2024). Although these definitions are similar, they differ in one respect; that being whether the activity is actually tied to a school. In this respect, the term is somewhat ambiguous.

(4/23/2024 Judgment Entry, paragraph 7).

**{¶17}** Thus, the trial court found the term "extracurricular" ambiguous as it relates to whether an activity is actually tied to a school. Due to this ambiguity, the court then looked to the intent of the parties in the context of the agreed judgment entry to define the word and remove the ambiguity.

**{¶18}** Again, the October 21, 2022 agreed judgment entry states in part:

Case No. 24 MA 0048

Plaintiff and Defendant shall equally share in paying for the minor child's extracurricular expenses including but not limited to uniforms, lessons, fees, equipment, travel expenses and the like. Plaintiff shall share all paid expenses with Defendant via electronic communication and Defendant shall reimburse Plaintiff within thirty (30) days of notification or vice versa. Defendant currently owes Plaintiff $375.46 in outstanding expenses and shall pay same directly to Plaintiff within sixty (60) days of the Agreed Judgment Entry.

(10/21/2022 Agreed Judgment Entry, paragraph 4).

{¶19} At the January 18, 2024 hearing before the magistrate, both Appellant and Appellee testified that the minor child had never participated in any school related activities. As addressed, Appellant testified that when he and Appellee entered into the October 21, 2022 agreed judgment entry, the minor child was playing travel softball and was taking hitting and pitching lessons. Appellant said that as of October 21, 2022, their daughter had only played softball for recreational leagues and travel teams. Appellant was asked, "Did [your daughter] play … any school sports when you entered into this agreement with your ex-wife on October 21, 2022?" (1/18/2024 Hearing Tr., p. 56). Appellant replied, "Not at that moment, no." (*Id.*) Appellant indicated that after the October 21, 2022 agreed judgment entry was entered into, he did in fact reimburse Appellee for half of the minor child's registration fee for her travel softball club and paid towards her pitching and hitting lessons. When asked whether he just decided to stop paying the fees, Appellant stated, "I could not keep up with the spending." (*Id.* at p. 59).

{¶20} Any reimbursement for extracurricular activities over the years paid by Appellant to Appellee has, by admission of the parties, only been for activities non-related to the minor child's school, i.e., travel softball and recreational softball (community youth leagues not associated with school). At the time of the October 21, 2022 agreed judgment entry, the minor child had never played school sports or engaged in school activities. Appellant also consistently paid for travel softball and recreational softball expenses under the prior October 27, 2020 agreed judgment entry. Thus, it is apparent that for years the parties intended for the term "extracurricular" to include travel softball and

recreational softball. In support of this position, Appellant testified that up to and until the end of 2022, he was current on his reimbursement of these expenses for the minor child.

**{¶21}** The record reveals the parties did not limit the reimbursement requirement to "school related" extracurricular activities nor did they agree to different terms for non-school related extracurricular activities. The parties did agree on reimbursement for all extracurricular activities.

**{¶22}** Regarding extrinsic evidence in determining the parties' intent with respect to extracurricular activities, the trial court stated:

> Review of the transcript in the current matter reveals at the time the agreed judgment entry of October 21, 2022 was entered into, the only sport the minor child was participating in was travel softball. She was not in any school sponsored activity. The agreement provides for the parties to divide "travel expenses" as well. The evidence also showed at the time the parties entered that agreement, [Appellant] agreed he owed [Appellee] [$375.46] in outstanding extracurricular expenses and would pay them within a certain time period. As found by the magistrate, those expenses that were already incurred would have been for travel softball. It is reasonable for the court to find that when the agreement was modified, the parties intended extracurricular activities to include travel softball. The court finds no merit with [Appellant's] objection.

(4/23/2024 Judgment Entry, p. 3).

**{¶23}** Upon consideration, the trial court did not abuse its discretion in overruling Appellant's objections and adopting the magistrate's decision determining that Appellant reimburse Appellee the sum of $1,543.57 for his one-half share of extracurricular expenses for the minor child. Based on the facts presented, the court did not err in finding the term "extracurricular" ambiguous and defining the same based on extrinsic evidence of the intent of the parties at the time they entered into the October 21, 2022 agreed judgment entry.

Case No. 24 MA 0048

**CONCLUSION**

**{¶24}** For the foregoing reasons, Appellant's sole assignment of error is not well-taken. The April 23, 2024 judgment of the Mahoning County Court of Common Pleas, Domestic Relations Division, overruling Appellant's objections, adopting the magistrate's decision, and ordering him to reimburse Appellee the sum of $1,543.57 for his one-half share of extracurricular expenses for the minor child is affirmed.

Waite, J., concurs.

Hanni, J., concurs.

Case No. 24 MA 0048

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Domestic Relations Division, of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**